THE WENSLEYDALE.[1]

McCORMACK v. THE WENSLEYDALE.

*(District Court, E. D. New York.   March 10, 1890.)*

SEAMEN—SICKNESS—FREIGHTING VESSEL—LIABILITY TO FURNISH PHYSICIAN.
    The failure of a freighting vessel to provide a physician or nurse for a sick sailor during a voyage is no neglect of the duty owed to the seaman by the ship-owner.

In Admiralty.   Action for personal injuries alleged to have been caused to seaman by negligence of ship.

*Goodrich, Deady & Goodrich,* for libelant.

*Butler, Stillman & Hubbard,* for claimant.

BENEDICT, J.   The libelant was a steward on board the ship Wensleydale, during a voyage from Boston to Colon, Central America; thence to Progresso; thence to New York.   While on the voyage from Progresso, Chagres fever broke out on the vessel, and the libelant became sick.   On arrival in New York, he was sent to Swinburn Island Hospital.   His libel charges that owing to the negligence of the master and officers of the vessel, and want of proper medicines, appliances, and conveniences, his sickness and sufferings were greatly aggravated, and by reason thereof it became necessary while in the hospital to amputate nine of his toes, to his damage of $5,000.   The proof shows that during the voyage from Progresso to New York the master died, leaving the mate the sole navigator of her, and he in a feeble condition.   That 14 of the crew were taken sick, and 8 were sick when the vessel arrived in New York.   The evidence also shows the vessel to have been supplied with medicines and with food, but that the libelant's sickness was so severe as to make him unwilling to take food, and that when he arrived in New York he was so low that it was doubtful whether he would survive the removal from the ship to the hospital.   The enfeebled condition of the libelant at the time of his arrival in New York appears to have been in a great measure owing to want of nourishment while sick on board the ship.   This want of nourishment, however, was not caused by a failure to provide the vessel with proper food, but from the unwillingness of the libelant to take food, and the fact that no special food calculated to tempt his appetite was prepared, nor did any one endeavor to compel him to take nourishment.   These facts have forced the libelant to rest his right to recover upon the proposition that the failure of the ship to provide a physician or a nurse, competent to prepare food calculated to tempt the appetite of the sick man, and able to compel him to take nourishment, was neglect of the duty owing by the ship-owner to the seamen of his ship.

This proposition cannot be upheld.   Whatever may be the duty when the ship is a passenger ship, it has never been, to my knowledge, held that seamen on freighting ships are entitled to be furnished with the

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

services of a physician or nurse during the voyage. On such vessels, from time immemorial, it is the master of the ship who is expected to act as physician and nurse, according to his ability, in case of sickness or accident; and his care and attention are all that the crew have a right to demand, under the contract of hiring. This is an action upon contract, and, while there was lack of attention to the condition of the libelant while sick on board the ship, the low condition reached by the libelant cannot be held to have arisen from a breach of the mariner's contract. It was attributable to the misfortune which befell the ship and its crew when the master died, and the mate and crew became enfeebled by the fever that broke out on board.

The libel contains another cause of action, namely, that certain personal effects which were left on board the vessel when the libelant was taken on shore sick, in New York, have not been returned. The evidence shows that the libelant left on board the ship, when he was taken to the hospital, his clothes and some other personal effects. Some of his clothes were burned, because infected, some have been returned, but others have not been returned or accounted for. The answers to the interrogatories propounded to the libelant by the claimant show the value of the articles not accounted for to be $187.84. For this sum he may have a decree; unless the claimant elect to have a reference to ascertain the value of the articles not accounted for, in which case a reference will be directed to ascertain the value.