## BARBER ASPHALT PAV. CO. v. ODASZ.

(Circuit Court of Appeals, Second Circuit. February 26, 1894.)

### No. 54.

MASTER AND SERVANT—DEFECTIVE MACHINERY—EVIDENCE.

In an action against an employer to recover damages for injuries by means of defective machinery, evidence of the making of improvements and safeguards after the accident is incompetent. Railroad Co. v. Hawthorne, 12 Sup. Ct. 591, 144 U. S. 202, followed.

In Error to the Circuit Court of the United States for the Eastern District of New York.

'At Law. This was an action by the Barber Asphalt Paving Company against Frances Odasz, as administratrix of Frank Odasz, to recover damages for negligence alleged to have caused the death of her intestate. 'There was a verdict for plaintiff, and, to review the judgment entered thereon, the defendant brings the case here on writ of error.

Daniel Noble, for plaintiff in error.

Wales F. Severence, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This was an action at law, brought in the circuit court for the eastern district of New York by Frances Odasz, as administratrix of Frank Odasz, to recover damages for injuries resulting in the death of the intestate, a day laborer in the service of the defendant corporation. The injuries were alleged to have been directly caused by defective and improper machinery or appliances which, through the negligence of the defendant, were permitted to be used in its business. A verdict for the plaintiff was rendered by the jury, and, judgment having been entered, the cause was brought to this court by writ of error.

The defendant, a manufacturing corporation in Long Island City, was in the habit of receiving loads of sand in scows at the dock at the foot of its yard. This sand was hoisted from the scow, and dumped into a self-righting V-shaped car, upon a tramway about 22 feet above the ground, and running on a level through the yard, and was then dumped from the car wherever it was needed. The gauge of the track was 30 inches; the car hopper was 60 inches at the top, and 5 feet 6 inches in height. The car was shoved into the yard by two men, who raised a lever at its end when the place of dumping was reached. At the time of the accident the entire load in the car was not discharged when the dumping took place, and the men shook the car to rid it of all the sand, when it fell over and upon the plaintiff's intestate, who, with others, was shoveling the sand underneath, and killed him. There was no framework around the track, nor platform alongside of it, at the time of the accident. Afterwards, a platform was placed on the side of the track.

The theory of the plaintiff was that the employer, being under obligations to provide a reasonably safe place for his employes to work in, negligently did not make such provision; that the yard under the tramway was unsafe by reason of the liability of the unstable V-shaped car, when shaken, to fall off from a tramway which had no guard rail; and that, from the nature of the case, the danger was, or should have been, apparent to the employer. The important disputed facts which the plaintiff strove to establish were the dangerous character of the tramway, and that it ought to have been known, and therefore avoided, by the employer. The law upon the subject of the liability of an employer for the consequences of dangerous appliances which he furnishes to or for his workmen has been recently stated by this court as follows:

"An employer does not undertake absolutely with his employes for the sufficiency or safety of the appliances furnished for their work. He does undertake to use all reasonable care and prudence to provide them with appliances reasonably safe and suitable. His obligation towards them is satisfied by the exercise of a reasonable diligence in this behalf. Before he can be made responsible for an injury to an employe inflicted by an appliance adequate and suitable, ordinarily, for the work to be performed with it, there must be satisfactory evidence that it was defective at the time, and that he knew, or ought to have known, of the defect." Steamship Co. v. McDonald, 59 Fed. 479.

The liability of an employer, and the corresponding duty of an employe, have also been succinctly summarized as follows:

"An employe cannot recover for an injury suffered in the course of his business from defective machinery, unless the employer knew, or ought to have known, the fact, and the employe did not know it, or had not equal means of knowing it." Hayden v. Manufacturing Co., 29 Conn. 548.

The plaintiff, having the burden of proving negligence, asked her witnesses, in her testimony in chief in the circuit court, whether they could tell a way by which the accident could have been prevented. One witness answered: "There is a platform made there now, but it was not there then, to prevent the car from falling." Another witness said that "the tramway is made different from its construction when Odasz was killed." Each of these answers was objected to, was admitted, and exceptions were taken to the rulings. When a juror asked the direct question whether any improvement had been made to the tramway for the safety of the men working under it, the question was excluded.

The effect of the answers which were excepted to was to inform the jury that safeguards were placed by the defendant after the accident, as a fact bearing upon the question whether the omission to place them before was not a negligent omission, and as also an admission of prior negligence. The judge excluded the questions when directly and formally asked for the purpose of showing negligence before the accident, but the quoted answers slipped in, ostensibly in reply to the question whether the track was capable of a construction which would prevent accidents. The testimony was wanted by the plaintiff's counsel for the purpose of proving negligence. The answers showed the jury that changes had been made after the accident for the purpose of preventing similar calamities in the future. A plausible but untrue inference from this class of testimony is apt to be that the subsequent act, for the purpose of securing perfect safety in the light of past experience, is an admission of a previous omission to take proper precautions, and has an effect to call the minds of the jury away from the real issue, which is that of reasonable, but not extraordinary, care at the time of the accident, in view, among other considerations, of previous and universal experience. The incompetency of this class of testimony in actions for negligence has recently been decided by the supreme court, upon the ground that:

"The taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue; and

to create a prejudice against the defendant." Railroad Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591; Corcoran v. Peekskill, 108 N. Y. 151, 15 N. E. 309.

We think that the answers, having been objected to, should not have been permitted to go before the jury, for, with the tendency of juries, in actions for injuries to the person, to find the fact of negligence upon insufficient grounds, this class of acts of the employer is received by them as significant proof of an admission of prior neglect. Although the judge did not intend to allow the testimony upon the theory that it tended to prove negligence, we think that its admission had an injurious effect, and that a new trial should be had.

The judgment is reversed, with costs, and the case remanded to the circuit court with directions to set aside the verdict and to order a new trial.