DARYL TABER, Plaintiff, *v.* CITIES SERVICE OIL COMPANY, Defendant.

Supreme Court, Trial Term, New York County, April 17, 1950.

*Saul Sperling* and *Samuel Nierenstein* for plaintiff.

*Frederick J. Waters* for defendant.

GREENBERG, J. Plaintiff brings this action under the Jones Act (U. S. Code, tit. 46, § 688) to recover damages for injuries which he alleges were sustained while employed as a seaman aboard the S. S. *Chiwawa*, a tanker owned and operated by the defendant.

The plaintiff testified that on December 28, 1948, about noon, he was ordered by the chief mate to transfer a drum of kerosene from midship to the lamp locker in the forward part of the vessel. In order to do this he took two three-gallon buckets, filled them with the kerosene and proceeded into an inner passageway of the vessel. He testified that there were no lights on in the passageway and that when he tried the light switch he found the lights were not in working order. He nevertheless proceeded through the unlighted passageway to the lamp locker, carrying the kerosene. While so engaged he slipped on oil slick in the passageway and fell causing injuries to his back and knee. These injuries according to the plaintiff and his witnesses include a painful spinal sprain requiring a spinal fusion operation and use of a brace.

The plaintiff's causes of action are predicated on the grounds that the defendant was negligent in failing to provide him with a safe and proper place in which to work, in allowing the passageway to become and remain covered with oil and grease and in failing to keep the lights in the passageway in working order.

The defendant urges as a bar to recovery (1) lack of any negligence on its part; (2) assumption of risk by plaintiff; (3) contributory negligence of plaintiff; and (4) insufficiency of proof to show plaintiff's injuries were the result of the fall.

The proof adduced at the trial which in the main is undisputed on this phase of the case established that at the time of the accident and for some time previously the lights in the passageway in which the accident occurred were not in working order and that there was oil slick on the deck. These conditions had been reported to the chief mate by the third mate some hours before the accident but had not been remedied. The failure of the defendant promptly to repair the lights and remove the oil slick constituted negligence on its part which was a proximate cause of the accident. The shipowner has a nondelegable duty to furnish a safe place in which to work (*Cleveland-Cliffs Iron Co.* v. *Martini*, 96 F. 2d 632 [C. C. A. 6th, 1938]) and a higher degree of care is required of him than is required of employers of servants for work ashore (*Storgard*

v. *France & Canada S. S. Corp.*, 263 F. 545 [C. C. A. 2d, 1920];
*Armit* v. *Loveland*, 115 F. 2d 308 [C. C. A. 3d, 1940]). The
negligent failure to provide and maintain adequate lighting
was a failure to perform his duty and rendered the shipowner
liable for resulting injuries (*Badalamenti* v. *United States,*
160 F. 2d 422 [C. C. A. 2d, 1947]; *Lo Bue* v. *United States,*
75 F. Supp. 154 [U. S. Dist. Ct., E. D. N. Y., 1947]; *Dervishoglu*
v. *Boyazides,* 44 F. Supp. 385 [U. S. Dist. Ct., E. D. N. Y.,
1942]).

Similarly the failure to remove oil and grease spots was a
failure in performing this duty which imposed liability on the
shipowner (*Becker* v. *Waterman S. S. Corp.,* 179 F. 2d 713
[C. A. 2d, 1950]; *Pariser* v. *City of New York,* 146 F. 2d 431
[C. C. A. 2d, 1945]; *Armit* v. *Loveland, supra*).

The proof also established that the plaintiff in proceeding
through the unlighted narrow passageway encumbered as he
was by a bucket in each hand filled with oil was negligent and
that his negligence was a considerable contributing cause of
the accident.

The decisions of the Supreme Court of the United States
as well as the lower courts leave no doubt that under the Jones
Act the conduct of the plaintiff in this case would not bar all
recovery for his injuries. Under these decisions, discussed
below, the actions of the plaintiff did not constitute an assumption of risk. His actions constituted contributory negligence
which under the statute (U. S. Code, tit. 46, § 688; tit. 45, § 53)
does not bar recovery but is merely grounds for the proportionate diminution of damages.

The rationale as well as the rule is clearly stated by the
Supreme Court in its decisions. In *The Arizona* v. *Anelich*
(298 U. S. 110, 122 [1936]) and *Beadle* v. *Spencer* (298 U. S.
124 [1936]), both decided the same day, the court, after survey
of the special conditions of seamen which gave rise to the
admiralty rule re assumption of risk, held that the Jones
Act, as a remedial measure, embodied that rule and therefore
" assumption of risk is not a defense to a suit brought by a
seaman under the Jones Act for negligent failure of the master
to provide safe appliances or a safe place in which to work "
(*Beadle* case, *supra,* p. 129). In the *Beadle* case the court also
repeated the rule that contributory negligence was not a bar
to recovery but merely a ground for the proportionate reduction of damages.

This doctrine limiting assumption of risks as a defense was
further developed and extended by the Supreme Court in the

leading case of *Socony-Vacuum Oil Co.* v. *Smith* (305 U. S. 424 [1939]) in which the court held that assumption of risk is not a defense to a suit by a seaman for injuries caused by a defective appliance even when the seaman had a free choice to avoid the use of the defective appliance. Thus the court stated (p. 432): "We think that the consistent development of the maritime law in conformity to its traditional policy of affording adequate protection to seamen through an exaction of a high degree of responsibility of owners for the seaworthiness of vessels and the safety of their appliances will be best served by applying the rule of comparative negligence, rather than that of assumption of risk, to the seaman who makes use of a defective appliance knowing that a safe one is available."

The rule so clearly laid down in these decisions has been consistently applied by the lower courts (*Becker* v. *Waterman S. S. Corp.*, 179 F. 2d 713, *supra; Herring* v. *Luckenbach S. S. Co.*, 137 F. 2d 598 [C. C. A, 2d 1943]; *Lewis* v. *United States Nav. Co.*, 57 F. Supp. 652 [U. S. Dist. Ct., S. D. N. Y., 1944]).

In the *Becker* case the chief officer of a ship sued to recover damages under the Jones Act for injuries sustained when he slipped on an oil spot while descending into a tank to supervise its cleaning. The evidence at the trial established that it was the duty of the plaintiff to keep the tanks clean, that he had told the asistant engineer to pump out the oil, and that he had knowledge that this had not been done. The court held that under the Jones Act the assumption of risk was not a defense and the fellow servant rule was abrogated. Therefore the jury was entitled to find that the negligence of the assistant engineer was a contributing cause of the accident. Any negligence of the plaintiff might reduce the amount of his recovery but would not be a bar to his action. It was therefore held that it was not a defense that the plaintiff knew of the dangerous condition of the tank and had the duty of correcting that condition.

The defendant relies on two decisions of the Circuit Court of Appeals, Second Circuit, in support of its defense of assumption of risk. In the first of these cases, *Holm* v. *Cities Service Transp. Co.* (60 F. 2d 721 [1932]), the court held (p. 723): "So a seaman off duty who has gone for a drink of water and decides to return to his room over a deck he knows is slippery and may have oil collected in pools upon it, when he knows there is a safe though somewhat longer way for him to return, must be held to have assumed the known and obvious risks incident to his voluntary choice." The same court in

explaining the *Holm* decision in its later decision in *Wong Bar* v. *Suburban Petroleum Transport* (119 F. 2d 745 [1941]) stated that the *Holm* decision was limited to the case where a seaman was *off duty* at the time of the accident.

The second of the cases relied on by the defendant is *Johnson* v. *United States* (74 F. 2d 703 [1935]). In that case a seaman had been swept overboard while crossing a deck in rough weather despite general instructions to use a safer route through a shaft tunnel. The court held that the seaman had assumed the risk of the dangerous method. On the facts of this case, the seaman had chosen the dangerous route *contrary to orders*. The same court, in its later decision in *Smith* v. *Socony Vacuum Oil Co.* (96 F. 2d 98, 101 [1938]) stated that the *Johnson* decision could be sustained because the seaman took a dangerous route *contrary to orders*.

These cases are therefore not applicable to the instant case in which the plaintiff was on duty at the time of the accident and there was no evidence that he was acting contrary to any instructions. The controlling rule to be applied in this case is therefore the general rule laid down by the Supreme Court that assumption of risk is not a defense to an action under the Jones Act to recover for injuries due to the failure of the master to provide safe appliances or a safe place to work even though the seaman may have chosen a dangerous method rather than an available safer method.

The final question concerns the causal relationship between the accident and the condition from which plaintiff claims to be suffering. The medical testimony, as in so many cases, is sharply divided. The court is persuaded primarily by the one disinterested medical witness in the case, Dr. John J. Davies, orthopedic surgeon at the United States Marine Hospital at Baltimore. He testified, not only as an expert, but primarily as an attending physician for almost a year. It was his opinion that the condition for which he has been and is treating the plaintiff was caused by the accident of December 28, 1948. His diagnosis of "acute lumbar sprain" is confirmed by the records of the United States Marine Hospitals at Stapleton, Staten Island, and Baltimore, which reflect a diagnosis of traumatic arthritis of lumbar spine due to direct trauma and hernia of gluteus maximus. In accord also is the testimony of two other orthopedists who examined plaintiff on several occasions, and who read the X rays in support of their medical opinion.

Plaintiff is accordingly entitled to prevail. The amount of the judgment must be influenced by the relative degrees of plaintiff's and defendant's negligence (*Socony-Vacuum Oil Co. v. Smith,* 305 U. S. 424, 433, *supra*). Apportioning the damages on the basis of the finding made by the court with respect to the contributory negligence, judgment is directed in favor of the plaintiff in the sum of $27,500 of which figure $2,500 is for maintenance. Settle judgment.