## OLSON *v.* FLAVEL.

### *(District Court, D. Oregon.* March 31, 1888.)

SHIPPING—LIABILITY OF OWNER OR VESSEL FOR TORT—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.

Contributory negligence is not a bar to a suit in admiralty for damages on account of a personal injury; and. where the fault which caused the same is concurrent or mutual, the court will apportion the damages according to the equity and justice of the case.

*Syllabus by the Court.*)

In Admiralty. Libel for damages.

*John H. Woodward,* for libelant.

*C. E. S. Wood,* for defendant.

DEADY, J. This suit is brought to recover damages for a personal injury suffered by the libelant while employed as mate on the steam-tug Columbia.

It appears from the pleadings and evidence that on January 8, 1887, the defendant was part owner of the tug Columbia, then engaged in towing vessels in and out of the Columbia river, when and for some time before the libelant was employed thereon as mate; that on said date, the Columbia came into Astoria from a cruise on the outside, and laid up at her wharf, when the master went ashore, and left the libelant with the aid of the two deckhands, to put a few tons of coal aboard, as usual, preparatory to the next trip.

In doing this, a gang plank about 18 inches wide was placed one end on the dock and the other in a sling over the deck of the tug, which was several feet below the dock, and stayed so as to keep it from swaying to either side. The coal was carried out on the plank in iron wheel-barrows and then dropped down the hatchway into the bunkers.

The libelant wheeled one of the barrows, the handles of which would work up and down three or four inches and cause the barrow to tip from side to side, and on one occasion the libelant thereby lost his balance and fell to the deck of the tug and broke his leg, in consequence of which he was laid up in the hospital, and rendered unable to work for a considerable period.

It was customary to coal this tug in this way, and the master, who was fully aware of the fact, did not interfere to prevent it, or make objection to it. There was also an iron chute on the dock, by means of which the coal could have been sent down into the hold through a manhole in the deck, but that involved the further labor of moving it from where it fell, into the bunkers.

The defense is contributory negligence. In support of it there was an attempt to prove that the libelant was intoxicated at the time of the injury, which failed.

It was also contended that the libelant was not engaged in the performance of his duty as mate, when wheeling coal, and therefore the defendant is not liable for the injury thus sustained.

But in my judgment this proposition cannot be maintained. It may be that he might have stood by and seen the two men put the coal aboard without his help. · But certainly he was not to blame for "lending a hand," if he was mate. In rendering physical aid in so simple a matter as this, he need not have failed in his special duty, which was the oversight of the business.

And this, I think, is particularly so in the case of a small vessel like the Columbia, with a crew, outside of the engine-room and pilot-house, of only three persons,—the libelant and two deckhands; the former of whom had come up from the latter position while in the same employ.

The third point made in support of this defense is that the mate had the choice of methods in putting the coal on board, and that, having adopted the dangerous one, he was guilty of negligence, and must bear the consequence. In other words, he might have used the chute, or constructed a gangway of greater width out of the plank at his service, on the wharf; and, if the barrows were out of order, he might have informed the master of the fact, so that others could have been obtained.

Some barrows were exhibited in court, such as the evidence on the part of the defendant tended to prove were used on the occasion, and it was claimed that they were in good condition. They were not broken in any way, and did not appear to be out of order, but on taking hold of them and pressing the handles in an opposite direction, they moved up and down about four inches, owing apparently to the large diameter of the loop at the end of them, in which the axles turned.

I do not think there was any negligence on the part of the libelant in the use of these barrows, so far as their condition is concerned. But I do think it was dangerous to use them on this narrow plank at so great a distance above the deck. It is true, it was a much more expeditious way of getting the coal into place, than by the chute, as it saved one handling of it, besides the wear and tear of the deck. And although, a wider way might have been made by the use of another plank, it would have been inconvenient to wheel a barrow on such a surface, with one plank rising and the other sinking under the foot of the wheeler and the wheel catching in the opening and closing gap between them. Perhaps this difficulty might have been partially avoided by laying down a third plank over the joint between the first two.

On the whole, my judgment is that the libelant is not blameless in this matter. He should have put the coal on with the chute or constructed a safer gangway to wheel on.

But the defendant is not without fault in the premises. This was the usual method of coaling the Columbia. The chute was used for special reasons in coaling other tugs belonging to the same management. The

master of the Columbia knew that she was usually coaled by means of these barrows and this plank; and that it was being so done on this occasion. He made no objection to the practice, or uttered any warning against it. In this, I think he was quite as culpable as the libelant.

The limbs and lives of seamen are to some extent, in the care and keeping of the superior skill and intelligence of the master, and he ought not to allow them to use unnecessarily dangerous or risky appliances or methods in the performance of their duties, without objection or warning.

Contributory negligence is considered a bar to an action for damages at common law. 2 Thomp. Neg. 1146. But a better rule is recognized in the admiralty. Where the negligence is concurrent, or both parties are in fault, courts of admiralty will apportion the damages or give or withhold them, in the exercise of a sound discretion, according to principles of equity and justice, considering all the circumstances of the case. *The Marianna Flora*, 11 Wheat. 54; *The Explorer*, 20 Fed. Rep. 135; *The Wanderer*, Id. 140; *The Max Morris*, 28 Fed. Rep. 881; *Atlee* v. *Packet Co.*, 21 Wall. 389.

It is true, that in *The Chandos*, 6 Sawy. 544, 4 Fed. Rep. 649, and *Holmes* v. *Railway Co.*, 6 Sawy. 262, 5 Fed. Rep. 523, it is assumed that in the case of personal injury, contributory negligence on the part of the libelant is a defense to a suit in admiralty for damages. But this question was not raised in these cases. It was not argued by counsel, or considered by the court. Neither was it material, as the court did not find there was any contributory negligence in the latter case on the part of the libelant's testate, and only decided, that if there was, it could not be taken advantage of, unless it was pleaded. In the former case it was found that the negligence of the libelant was the substantial cause of the injury, and therefore he could not recover damages for it.

This is the first time the question has been made in this court, and I feel justified, in the light of the authorities cited, to follow the leading of my own judgment, and hold that contributory negligence is not a bar to a suit in admiralty, for damages arising from a personal injury. For whatever may be said by the sages of the common law, about the difficulty in such cases of determining "whose wrong-doing weighed most in the compound that occasioned the mischief," it is not just to leave a seaman to suffer, without redress, all the consequences of an injury caused by the fault of his employers as well as his own.

In apportioning the damages, the fault of the seaman must not be overlooked; and the effect that should be given to it is suggested by the saying of Mr. Justice STORY in *The Marianna Flora, supra:* "A party who is *in delicto* ought to make a strong case to entitle himself to general relief." But for the allowance of special or partial relief the circumstances of the case are the only guide.

The libelant claims $1,200 damages for the injury, and damages in the nature of wages from February 1st to the date of decree, at the rate of $50 a month. The libelant was receiving $50 a month on board when he was hurt, and was paid wages in full for January. The nature of the

injury sustained does not appear further than that his leg was fractured. There is no evidence as to the expense incurred in his cure, and it is understood that he was cared for in the Marine hospital without charge.

My judgment is that the libelant ought to be compensated for the loss of his time caused by the injury, and nothing more. The wages he was receiving, with board and lodging, indicate that his time was worth $75 per month.

The libelant alleges that he was not yet able to work when he filed his libel, April 22, 1887, while it is averred in the answer that by the middle of April he was as able to work as before the injury. There is no other evidence on the subject.

I find that the time lost after January was two and two-thirds months. This, at the rate of $75 a month, makes $200, for which sum; and costs and disbursements, the libelant is entitled to a decree.